# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Elhanan W. Fisher *v.* The Fidelity Mutual Life Association of Philadelphia, Appellant.

*Practice, common pleas—Pleading—Insurance.*

In an action upon a policy of life insurance where the statement of claim averred that " a true and complete copy of the policy is attached to and made part hereof," but the copy of the policy filed refers to conditions none of which is attached to the statement, the defendant should demur to the statement; and if it fails to do so, and pleads non assumpsit, it cannot object, when the whole policy is offered at the trial, that the policy does not correspond with the instrument declared on. In such a case the admission of the policy is equivalent to an amendment of the statement, and if the defendant is not prepared to meet the issue in that form, it should plead surprise, and ask a continuance. After a trial upon the merits the Supreme Court will not consider the suggestion that the allegata and probata did not agree.

*Insurance—Life insurance—Attachment of application to policy—Act of May* 11, 1881.

The omission to attach to a policy of insurance a portion of the application is a failure to comply with the requirement of the Act of May 11, 1881, P. L. 20, and if it appears that there is a supplementary application which was not attached to or indorsed on the policy, the original or principal application is not admissible in evidence.

*Evidence—Letters—Negotiation for settlement.*

Letters and written communications made in an offer or negotiation with a view of a settlement are not admissible in evidence.

*Insurance—Life insurance—Suicide—Burden of proof.*

Where a policy of life insurance provides that the policy shall be void if the insured dies by his own hand, and also provides that payment shall be made "after receipt of satisfactory proof of death of said member, and the justness of the claim thereunder," the plaintiff is merely required to make out a case by affirmative proof of death, and title in the policy. The burden of proof is not upon the beneficiary of the policy to show that the assured did not die by his own hand.

*Insurance—Life insurance—Suicide—Proof of death.*

In an action upon a policy of life insurance the plaintiff is not bound by admissions contained in the proofs of death, and may offer evidence to contradict or vary them.

In an action on a policy of life insurance, it appeared that among the proofs of death there was a copy of a coroner's inquest and the testimony given thereon. Upon this copy plaintiff entered the following protest: "I have been informed the verdict was suicide, but I decline to be bound by it." The defendant made no request for further proofs, but accepted them as filed. *Held,* that the plaintiff was not precluded from recovery because the proofs of death tended to establish the fact of death by suicide.

Argued April 4, 1898. Appeal, No. 479, Jan. T., 1897, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1896, No. 1311, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Assumpsit on a policy of life insurance. Before Mc-MICHAEL, J.

At the trial plaintiff offered in evidence the portion of the policy attached to his statement.

The offers, objections and rulings of the court were as follows :

Mr. Hancock, of counsel for plaintiff : I am offering the policy, and it is contained on the front page of this sheet alone.

Objected to on the ground that the statement of claim is entirely different from the policy.

By the Court: I refuse to allow you to prove the face of the policy alone. The whole contract must go in. Exception for plaintiff.

Mr. Hancock: I offer in evidence the whole paper, and ask the court to exclude the part marked "Application," and the part marked "Privileges and conditions referred to in this policy," from the consideration of the jury, because they refer to the by-laws of the company, which are not printed in full on the back

of this policy, nor are they printed in the application. In connection with that I offer in evidence by-laws of the company, containing some eighteen pages, to show that while they are referred to in the privileges and conditions they are not printed in full.

By the Court: I understand you offer that paper in evidence, and request me to direct the jury not to consider a portion of it. I decline that.

Counsel for plaintiff offers in evidence the by-laws of the company. Objected to. Objection sustained. Exception for plaintiff. [1]

Mr. Hancock calls for the original report of the medical examiner attached to this policy.

By the Court: As to the application, I must assume that it is a correct one until proof is shown that it is not.

Mr. Hancock: I offer in evidence supplementary application, statements made to the medical examiner as supplementary to and part of the application, which contains this clause: "I hereby further declare that I am the identical person described above; that I have read and understood all the above questions put to me by the medical examiner and the answers thereto, and I hereby warrant said answers to be true; and in consideration of the policy applied for by me being in the case of my death made incontestable three years after date of issue, I agree that if, during my lifetime, any statements or answers in this or my original application are alleged to be untrue, and I fail, when called upon, to furnish to said association satisfactory evidence of their truth, the policy of insurance issued upon the faith of such statements or answers shall be ipso facto void, and I agree to surrender said policy upon tender or payment to me of the aggregate premiums paid."

I also offer confidential report of the medical examiner to the association.

I also offer to show, by comparing the application on the back of this policy, that neither the so-called supplementary application nor the medical examiner's report, on the strength of which this policy was issued, is attached to this policy.

Also the by-laws referred to in the policy, and the policy itself; to show by a comparison between the original by-laws of the company and the provisions and conditions contained on

the back of the policy that it is not a full copy of the by-laws, and that it is not a correct copy.

Mr. McCullen, of defendant's counsel: I object to any offer on the part of the plaintiff until he offers the whole policy in evidence.

By the Court: I will permit you to show that the copy of the application is not a correct one. You have already offered the by-laws, and I understand that you offer the paper which is annexed to it and the application to show that it is not a correct copy. The act of assembly is mandatory upon the insurance company to furnish a correct copy of the application with the policy. I have to decide how much of this paper is evidence. If the copy of the application is a correct copy, the whole of it is evidence. If it is not correct, that portion is not evidence.

Mr. McCullen, for defendant, objects to the offer or admission of any testimony of any character whatever until the counsel for the plaintiff first proves some contract of some character obligating the defendant to pay some amount of money to the plaintiff.

Plaintiff under this offer called Levi G. Faust, president of defendant company, and proved that the by-laws of the association referred to in the condition on the back of the policy are not printed with the conditions.

Plaintiff offered in evidence the whole policy with the indorsement thereon.

Defendant objected because it differed from the instrument declared on.

The offer was admitted. Exception for defendant. [1]

The court charged in part as follows:

As a trial judge, I am of opinion that on proper cause being shown, it would have been the court's duty to compel the plaintiff to produce a full copy of the policy, but that part of the proceedings having passed, and the case having come for trial, [I think the statement is sufficient to go to trial on, and that the plaintiff has a right to come before the court and jury and ask that his case may be proceeded with. Therefore, the case is before you upon it. I am bound to say, in justice to the defendant—and he may review my decision if I am in error—that an inspection of the policy shows that all the conditions

which are a part of the policy were not set forth in the copy in the statement, as should have been done, but in our advanced stage of legal proceeding, when we look at the substance of things rather than the form—for, although we have not abandoned those ancient time-honored forms of pleading under which causes under our jury system have been tried for hundreds of years, yet we rather look at substance than form, and whatever may be the views of counsel and however bitterly and zealously they press those views on us, yet we must look, in the administration of justice, at the cause of the parties and not at the methods that counsel employ in bringing suits before us. Therefore, looking at the rights of the parties here, I have reached the conclusion, which I do not mean to say is free from error, that the plaintiff's case is sufficiently set forth to bring it before you for trial.] [4]

The contract on which the plaintiff sues is a policy of insurance, and that paper is before you, and is to be considered by you and by me, for written documents are to be construed by the court as made ; that is, where parties of full age make contracts, they make them with the understanding that courts will enforce them as they are made, and if those contracts are made subject to certain conditions, those conditions will be enforced, if they are not opposed to public policy or to good morals. There is no higher policy in the law that I know of, and nothing more in accordance with the proper administration of justice, than that the courts should enforce contracts as they are made by individuals. The rule seems to be common sense as well as law, and one that has been enunciated by one of the greatest masters of jurisprudence that ever sat in any court. I refer to the master of the rolls, Baron JESSEL, of England. Therefore, this case comes before you on the whole policy, and that policy of insurance, among other things, says : " It is understood that if the member, within three years from the date hereof, dies by his own act, whether sane or insane, . . . . this policy shall be absolutely void, except as to the moneys paid hereon, which moneys in every such event shall constitute the sum insured in this association under this policy." So that the question of fact in this case for your consideration is, did the decedent, the man on whose life this policy was taken out, Edgar L. Fisher, die by his own hand ? It matters not whether

he was sane or insane, for when he made the contract in the policy of insurance he provided that if he should die by his own hand only a certain amount should be due. Therefore, the question of fact which you are to determine is, did he die by his own hand, whether he was sane or insane.

To come down to the facts of this case, it is only necessary to refer to that which is in evidence, for you are sworn to decide it on the evidence, and I am sworn to interpret the law as I understand it. What is in evidence in this case is, first of all, the policy itself—the contract between the parties. Secondly, it is in evidence that Edgar L. Fisher is dead, and that proofs were furnished to the company. Whether satisfactory or unsatisfactory, they were sent to the company. [I may say that when the plaintiff closed his case, he had made out a case against the company, because he showed that the company had agreed to pay a certain amount of money under the contract of insurance on the death of Edgar L. Fisher, and that the premiums were paid, and that Edgar L. Fisher was dead. That made a case against the company, or what we call a prima facie case.] [5]

[Then the duty or burden rested upon the defendant to show that the deceased man, Edgar L. Fisher, died by his own hand, sane or insane. Gentlemen of the jury, the only testimony we have in regard to that burden assumed by them—I think I may say the only testimony—is the admission made by the plaintiff, Elhanan W. Fisher, when he forwarded the proofs of death. The proofs of death are before you. I cannot instruct you, as a matter of law, that that admission is of itself conclusive evidence that Edgar L. Fisher died by his own hand. The proofs of loss were properly admissible in evidence as an admission of the death of Edgar L. Fisher, but you are to take them and consider them, and consider whether he did die of his own hand.] [6] The defendant, relying on that admission, has not followed it up with other proof. Perhaps he relied on other portions of the case, but I can only call your attention to the fact that the proofs of death were properly admitted in evidence as an admission on the part of the plaintiff. However, when you come to consider them, you are entitled to consider them, with all the explanations therein contained, and decide whether or not it was an admission. You will consider as a part of that

paper, and as submitted with it, the coroner's notes, which in themselves are not evidence, but which become evidence because they are part of the admission made by the plaintiff in his own case. If you then come to the conclusion that Mr. Fisher did die by his own hand, your verdict will be for the defendant, except for another portion of the case which I shall allude to. I think I have made myself clear on that. That is evidence for you. I cannot instruct you that you are to be bound by that. That you are to determine as men of sense, and you are to determine it under the evidence. I may say in this cause that there might have been other proof produced, which has not been produced, as counsel probably relied on the belief that he had produced sufficient proof. It may be that where a man makes a claim against a company and it is said to the jury, " Well, I have no knowledge of it; the coroner's jury has found that Edgar L. Fisher died of his own hand, and died insane," and he gives all the particulars in detail, it may be that that is quite enough to satisfy twelve sensible men that the fact is so, and they will not render a verdict in any other way. I leave that to you as men of sense on the evidence, and do not instruct you particularly on it. Although the pleadings do not declare for the $105 premium, it is virtually admitted that the plaintiff ought to have a verdict for that amount at any rate. That seems to be conceded as fairly due by the defendant to the plaintiff, $105 and interest. Therefore, if you decide the question of fact that he died, whether sane or insane, by his own hand, you will find a verdict for $105 for the plaintiff. If you should come to the other conclusion, you will find a verdict for the whole amount.

Defendant's points and the answers thereto among others were as follows:

2. In this case, there being a variance between the allegata, or contract set out in plaintiff's statement of claim filed in this case, and the probata, or contract offered in evidence, there can be no recovery in this case, and the verdict of the jury should be for the defendant. *Answer:* I decline that point. [7]

3. Under all the evidence in this case the verdict of the jury should be for the defendant. *Answer:* I decline that point. [8]

Verdict and judgment for plaintiff for $5,252. Defendant appealed.

*Errors assigned* were that the learned trial judge erred (1) in admitting in evidence the policy of insurance offered by the plaintiff and which policy did not agree with the pleadings and was not a copy of the instrument upon which the suit was brought, the learned trial judge holding that the matter of the defendant's objection to the admissibility of the policy was one "of form rather than of substance;" (2) in ruling that the counsel for defendant had no right to cross-examine the plaintiff as to his answer to the question in the proofs of death, "Was the death of the decedent in any degree caused by his own hand or acts;" (3) in excluding the offer made by defendant's counsel to put in evidence the letter dated December 28, 1896, sent by the company defendant to Henry J. Hancock, Esq., attorney for the plaintiff, and the reply to said communication written by the said Henry J. Hancock, Esq., as attorney for the plaintiff; which letters are as follows:

"HENRY J. HANCOCK, ESQ.

"Dear Sir:—Herewith we hand you our check for $105.49, payable to the order of E. W. Fisher, in full settlement of policy 063421 on the life of Edgar L. Fisher.

"This check is sent in accordance with the terms of the policy, being the full amount of premiums received by the Association, with interest at the rate of six per cent. per annum to date.

"You will please have the accompanying receipt dated, signed, witnessed and, with the policy, attached to the check when depositing for collection."

"O. C. BOSBYSHELL, ESQ.

"Dear Sir:—I am in receipt of your cheque dated Dec. 28, 1896, No. 23180 for $105.49 and return it as it purports to be in full payment of policy 063421.

"We shall of course be happy to accept the money on account if you wish us to do so, but we don't think you have any right to attach such conditions to your cheque or release.

"I take it for granted from your above voluntary communication that your company is fully satisfied with the proofs of loss;" (4–8) above instructions, quoting them.

*P. F. Rothermel*, for appellant.—While courts are now very liberal in allowing a plaintiff to amend his claim, and to thus

escape a fatal variance between the allegata and the probata, it is equally true that, if the amendment is material, he must give the defendant as ample an opportunity as at the inception of a new case for the putting in of his altered defense: Conductors' Ins. Co. v. Birnbaum, 116 Pa. 565; Waite v. Palmer, 78 Pa. 192.

The trial judge should have refused the admission in evidence of the conditional policy, and as no leave to amend was asked, should have directed a verdict for the defendant, because of the variance: Brown v. Gilmore, 92 Pa. 40; 1 Chitty on Pleading, *316; Stump v. Hutchinson, 11 Pa. 533.

The learned trial judge erred in holding that the mere proof of the policy and of the death of the insured made out a prima facie case for the plaintiff, and placed upon the defendant the burden of showing that the insured committed suicide, and this though there was no proof whatsoever of the justness of the plaintiff's claim, and though the only evidence of the cause of the death, that contained in the preliminary proofs, showed it to be by suicide: Insurance Co. v. Newton, 22 Wall. 32; Campbell v. Ins. Co., 10 Allen, 213; Irving v. Ins. Co., 1 Bosworth, 50.

*John G. Johnson*, with him *Henry J. Hancock*, for appellee.— Neither the indorsement on the policy nor the application formed part of such policy, because of their reference to other papers not attached to or made part thereof: Act of May 11, 1881, P. L. 20; New Era Life Ins. Co. v. Musser, 120 Pa. 389; Pickett v. Ins. Co., 144 Pa. 79; Philadelphia Tool Co. v. Assurance Co., 132 Pa. 236; Mahon v. Pacific M. L. Ins. Co., 144 Pa. 409; Norristown T. Co. v. Hancock Ins. Co., 132 Pa. 385; Imperial F. Ins. Co. v. Dunham, 117 Pa. 460; Fire Ins. Co. v. Oberholtzer, 172 Pa. 223.

Even though the indorsement was part of the policy, there was no variance between the allegata and probata: Stump v. Hutchinson, 11 Pa. 533; Kroegher v. McConway, etc., Co., 149 Pa. 444; Eckert v. Schoch, 155 Pa. 530; Trainor v. R. R., 137 Pa. 148; Chapin v. Cambria Iron Co., 145 Pa. 478; Platz v. McKean Twp., 178 Pa. 601.

There was no error in refusing to permit a question to be put to the claimant as to whether, in the statement forming part of the proofs in evidence, he had been asked a question therein set forth: Queen's Case, 2 Brod. & Bing. 284; Romertze v. East

River Nat. Bank, 49 N. Y. 577 ; Trischet v. Hamilton Mut. Ins.
Co., 14 Gray, 456 ; Newcomb v. Griswold, 24 N. Y. 301.

There was no error in refusing to direct a verdict for defend-
ant, or to charge that the verdict of the coroner's jury and the
depositions connected therewith were conclusive against the
plaintiff : Biddle on Insurance, sec. 1003 ; Insurance Co. v.
Newton, 22 Wall. 32 ; Home Benefit Assn. v. Sargent, 142
U. S. 691; Ins. Co. v. Higginbotham, 95 U. S. 380 ; Lebanon
Ins. Co. v. Kepler, 160 Pa. 34 ; Cushman v. United States Life
Ins. Co., 70 N. Y. 79 ; Helwig v. Mut. Life Ins. Co. of N. Y.,
132 N. Y. 331 ; Boland v. Industrial Benefit Assn., 26 N. Y.
Supp. 433 ; Muller v. Orden Germania, 18 N. Y. Supp. 794 ;
Goldschmidt v. Mut. Life Ins. Co. of N. Y., 102 N. Y. 486 ;
Mut. Life Ins. Co. v. Hayward, 27 Southwestern Rep. 36 ;
Bachmeyer v. Mut. Reserve Fund Life Assn., 58 Northwestern
Rep. 399.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 17, 1898 :

In this action, on a policy of insurance issued by the defend-
ant association on the life of Edgar L. Fisher, the sum claimed
was $5,000 with interest.   It is averred in the statement of
claim that "a true and complete copy of the policy is attached
to and made part hereof."   The policy on its face is asserted
to be "subject to all the requirements hereinafter stated and
conditions hereon indorsed, which are hereby referred to and
made a material part of this contract;" but no such conditions
were attached to plaintiff's statement as filed.   Among those
conditions is a stipulation that if, within three years from the
date of the policy, the member dies by his own hand, the policy
shall be absolutely void, "except as to the moneys paid hereon,
which moneys . . . . shall constitute the sum insured and the
association's liability under this policy."   Instead of demurring
to the statement, the defendant company filed an affidavit of
defense in which it is averred that defendant never issued such
policy, and if plaintiff had such policy it was a forgery, and
that "defendant is not indebted to the plaintiff in any sum
whatever on account of such policy."   The plea was non as-
sumpsit; but, the real defense to plaintiff's claim was that the
assured had committed suicide.   It is conceded that under
the terms of the policy as contained in the indorsed conditions

the sum of one hundred and five dollars ($105) was due and owing by the defendant for premiums paid, notwithstanding the defense of suicide, but no such claim is made in plaintiff's statement.

The first three specifications, complaining of the learned court's rulings on questions of evidence, are not in proper form; but waiving that we think neither of them should be sustained.

In opening the case, plaintiff was called as a witness and identified the policy in suit. His counsel offered in evidence the face of the policy alone, but the court refused to admit it without the indorsements thereon. When the policy as a whole was offered the defendant objected that it did not correspond with the instrument declared on. The learned judge, holding "that the matter is one of form in pleading rather than of substance," admitted the whole policy. There was no error in thus ruling. Plaintiff's statement of claim gave ample notice of the policy upon which suit was brought. Attached thereto was a copy of the contract of indemnity as contained in the policy. Plaintiff considered it unnecessary to attach also a copy of the "privileges and conditions" referred to in the policy and indorsed thereon, for the reason that they refer to the by-laws for additional privileges, and the by-laws were not attached to the policy as required by the act of 1881. If the defendant wished to object to the statement in this form it should have demurred. Having failed to do so, objection on that ground came too late.

The suggestion that the allegata and probata do not agree is without force. The contract alleged is a conditional policy of insurance; the contract proved is the same. While the plaintiff's statement omitted some of the terms of the contract as claimed by the defendant, it was the fault of the latter that it did not take advantage of their omission at the proper time, if they were deemed essential. The ruling of the learned judge was equivalent to an amendment of the plaintiff's statement, and it will be so treated here. If the defendant was not prepared to meet the issue in that form it should have pleaded surprise and asked a continuance. It is too late now to raise this objection.

Another matter that appears on the record in this connection, is worthy of notice. The policy offered in evidence had in-

dorsed thereon a copy of the application upon which the policy was issued, but it clearly appeared in evidence that there was a supplemental application which was not attached to or indorsed on the policy. The caption of that paper is entitled "Supplementary application. Statement made to the medical examiners as supplemental to and part of the application," etc. The omission of this from the policy was a failure to comply with the requirement of the act of 1881. That act requires that a copy of the entire application,—not merely a part thereof,—shall be attached. The omission of a part, which of course includes a supplementary part, operates to exclude the whole. The statute must be interpreted in the spirit in which it was enacted. As was said in New Era Life Association v. Musser, 120 Pa. 389: "It is a wise and beneficent act, founded upon sound reasons of public policy. It affords protection to persons who insure their lives or property, and can injure no company conducted upon honest business principles."

As to the second specification it is sufficient to say that the entire statement was subsequently received in evidence and considered by the jury. The exclusion of the letters complained of in the third specification was justified on the ground that they were communications made in an offer or negotiation with the view of a settlement.

There was no error in refusing to affirm defendant's points recited in the seventh and eighth specifications respectively. It would have been error to have withdrawn the case from the jury and direct a verdict for the defendant.

The fourth, fifth and sixth specifications allege error in portions of the charge recited therein respectively. When considered in connection with other portions of the charge, there appears to be nothing in either of these excerpts that would justify a reversal of the judgment.

The seventh paragraph of the conditions printed on the back of the policy, containing the provision as to death of the assured "by his own hand," is as follows: "It is understood that if the member within three years from the date hereof die by his own hand, whether sane or insane, or if he shall die in consequence of a duel, or at the hands of justice, or though the habitual use of narcotics, or alcoholic or other stimulants, or if he shall practice any habit that tends to shorten life, or if at any

time he shall engage in any military or naval service in time of war (militia service to suppress local disturbances excepted) this policy shall be absolutely void, except as to the moneys paid hereon," etc.

The defendant's contention that under this clause the burden was on the plaintiff, not only to prove the policy, but also that the assured did not "die by his own hand," is wholly untenable. If he was required to prove a negative as to death by suicide, it would necessarily follow that, for same reason, he was required to establish the nonexistence of all the other stringent provisions by which the policy might be avoided. There is no force in the suggestion that defendant's contention as to the burthen of proof is sanctioned by the language of the policy, that payment shall be made, "after receipt of satisfactory proof of death of said member and the justness of the claim thereunder." This clearly contemplates nothing more than that a claimant shall make out his case by affirmative proof of death and title in the policy: Biddle on Ins. sec. 1003, and cases there cited.

The further position, that plaintiff was precluded from recovery because the proofs of death in this case established the fact of death by suicide, is also untenable under the evidence. In the "claimant's statement" filed as "proofs of death," to which a copy of the coroner's inquest and the testimony given thereon were attached, plaintiff entered the following protest: " I have been informed the verdict was suicide, but I decline to be bound by it." The defendant made no request for further proofs, but accepted them as filed. On the trial, it attempted to prove the defense of suicide by offering the proofs of death and the copy of the coroner's notes, as admissions by the plaintiff. But their force in that regard was very much weakened, if not wholly overcome by the protest. By attaching a copy of the verdict and depositions plaintiff admitted their existence, but by his protest he expressly declined to admit the truth of the fact which the defendant company sought to establish by them. It certainly has no right to complain of the manner of their submission to the jury.

Two of the three cases cited by defendant as authority for its position are to the effect that a plaintiff is bound by admissions contained in the proofs of death and cannot offer any

evidence to contradict or vary them; but the contrary has been held in this state: Lebanon Ins. Co. v. Kepler, 106 Pa. 28, 34. The other is Insurance Co. v. Newton, 22 Wallace, 32. In that case, the affidavits giving the time, place and circumstances of the death of the assured and the record of the coroner's jury were offered in evidence as proof of the fact of the death, and the court held that the whole admission must be taken together, and as it showed death by suicide there could be no recovery. This case is different in that there was no admission by plaintiff that death occurred by suicide. In that case the admission was clear and uncontradicted. This ground of distinction is pointed out in Insurance Co. v. Higginbotham, 95 U. S. 390. See also Goldschmidt v. Mutual Life Ins. Co. 102 N. Y. 486, in which the facts are similar to those of the present case.

Our consideration of the record has failed to disclose any error that requires a reversal or modification of the judgment. The specifications of error are therefore overruled, and the judgment is affirmed.